IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**JONATHAN ALLEN,**

       **Petitioner,**

**v.**                                        **Case No. 5:19-cv-00277**

**D.L. YOUNG, Warden, FCI Beckley,**

       **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

On April 15, 2019, Petitioner, an federal prisoner who is currently housed at FCI Beckley, in Beaver, West Virginia, acting *pro se*, filed an Application Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in State or Federal Custody (hereinafter "Petition") (ECF No. 2). Petitioner paid the applicable $5.00 filing fee. This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and it has been referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PETITIONER'S CLAIM FOR RELIEF

Petitioner is currently serving a 150-month term of imprisonment for aiding and abetting armed bank robbery in violation of 18 U.S.C. §§ 2113 and 2 and aiding and abetting the use, carrying, and brandishing of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. His current projected release date is January 17, 2021.

On November 23, 2011, the Federal Bureau of Prisons ("BOP") Designation and Sentence Computation Center ("DSCC") completed a custody classification for Petitioner.

(ECF No. 15, Ex. 1, Attach. C).  In completing such a classification, the DSCC reviews various documents pertaining to the inmate and follows guidelines promulgated by the BOP, which results in the assignment of "points" to the inmate if certain factors apply.  An inmate's total custody classification score is derived from the calculation of a "Base Score," using 10 criteria, which is then cross-referenced with a "Custody Score," using a "Custody Variance Matrix" table.  Once a total custody classification score is determined, the inmate is matched with an appropriate security level facility.  *See* BOP Program Statement ("P.S.") 5100.08, Inmate Security Designation and Custody Classification, Chapter 1, p. 2.[1]  Petitioner received a total custody classification score of 17 and was placed at a medium security level facility based thereon. (ECF No. 15, Ex. 1, Attach. E).[2]

One of the points attributed to Petitioner's base score was due to his alleged "minor escape history."  Petitioner acknowledges that his file, including his Presentence Investigation Report ("PSR"), contains information concerning a prior Maryland offense for which he was placed on community confinement.  However, Petitioner absconded from such community confinement and was subsequently arrested on a writ and placed in custody to serve his original Maryland sentence.

Although Petitioner does not challenge the accuracy of this aspect of his criminal history[3], he contends that the BOP has abused its discretion and misapplied his criminal history to assess a point in his base score for conduct that should not count as an "escape" under P.S. 5100.08.  Specifically, he contends that his arrest on a writ for absconding from

---

[1] Respondent's counsel attached relevant portions of P.S. 5100.08 to his Response.  However, the complete version of the current program statement is accessible online at www.bop.gov.
[2] The undersigned will further discuss how the points are calculated *infra*.
[3] The Petition does assert that the BOP violated the Privacy Act, 5 U.S.C. § 552(a)(g)(1) by not keeping accurate records (ECF No. 2 at 7); however, Petitioner does not contend that he did not abscond from community confinement.  At any rate, Petitioner has now abandoned any claim under the Privacy Act.

2

community confinement is not a "written finding of guilt," as required by the program statement, in order to qualify as a "minor escape" subject to receiving one escape point. (ECF No. 16 at 3). He states that his PSR merely "notes" as follows: "5/29/2003: Placement at a facility with electronic monitoring ordered; 6/11/2003: Absconded from electronic monitoring; 10/15/2004: writ served; defendant remanded to custody of Department of Juvenile Justice." (*Id.* at 4). Petitioner further contends that he had no hearing or other provision of due process leading to his being charged and punished for absconding. (*Id.*) Respondent, on the other hand, contends that the subject writ is a "documented finding of guilt." (ECF No. 15 at 7).[4]

Petitioner further contends that the single point in dispute moved him from a level which would have made him eligible for placement in a low security facility, to a level requiring his placement in a medium security prison. He further contends that his current custody classification makes him ineligible for programs that would enable him to earn additional good conduct time and be eligible for home confinement and earlier supervised release, and, thus, he essentially contends that it increases his sentence. His present Petition seeks the removal of the custody classification point and his transfer to a lower security facility or placement on home confinement.

On July 12, 2019, pursuant to the undersigned's Order to Show Cause, Respondent filed a Response (ECF No. 15). Respondent acknowledges that Petitioner exhausted the BOP's administrative remedy process prior to filing this Petition. (*Id.* at 2). The Response

---

[4] Respondent further contends that Petitioner had two other petty offense type charges for which he was found guilty *in absentia* and that the policy statement provides that "[f]ailure to appear . . . for any offense . . . *must* be counted [for escape points] when there is a documented finding of guilt." (ECF No. 15 at 8). Thus, Respondent maintains that, absent the point for his absconding from community confinement, Petitioner was still eligible to receive the disputed custody classification point that placed him in a medium security level. (*Id.*) However, Petitioner has not otherwise received points for those offenses.

3

largely asserts that Petitioner's claim for relief is more appropriately addressed under the Privacy Act, 5 U.S.C. § 552(a), and that such a claim would be untimely under the Privacy Act's two-year statute of limitations. (ECF No. 15 at 4-5). The Response further contends that an inmate's Central Files are exempt from the amendment and civil remedies portions of the Privacy Act. (*Id.* at 5-6). Finally, the Response contends that Petitioner's claim concerning his custody classification point lacks merit because the application thereof does not contravene P.S. 5100.08. (*Id.* at 6-8). Specifically, Respondent contends that Petitioner's total classification score is a 17 and that, even if the disputed point were removed, at a level 16, he would still qualify for a medium security level custody classification. (*Id.* at 8).

On July 26, 2019, Petitioner filed a Reply, in which he clarifies that he is abandoning any claim under the Privacy Act. (ECF No. 16 at 2). Nonetheless, he contends that his claim has merit and may be appropriately brought as a claim for habeas corpus relief under § 2241 for reasons that will be further addressed below. This matter is ripe for adjudication.

## **ANALYSIS**

Due to Petitioner's acknowledgement that he is not seeking relief under the Privacy Act, the undersigned declines to address Respondent's arguments thereunder. Petitioner makes it clear that he is not challenging the accuracy of his inmate file. Rather, he asserts that the BOP's treatment of his absconding from community confinement on a juvenile charge in Maryland as a minor escape for purposes of calculating his custody classification is erroneous and is affecting the execution of his current federal sentence.

P.S. 5100.08, Chapter 4, pp. 10-11 addresses the calculation of points for "History of Escape or Attempts." It provides that points "reflect the escape history of the individual

4

considering only those acts for which there are documented findings of guilt (i.e., DHO, Court, Parole, Mandatory Release, or Supervised Release Violation)." (ECF No. 15, Ex. 1, Attach. D at 10). The program statement further provides:

> Escape history includes the individual's entire background of escapes or attempts to escape from confinement, or absconding from community supervision, excluding the current term of confinement.

(*Id.*) The program statement provides for an exception for "absconding, runaways from foster homes and similar behavior," even where clearly documented, but permits the BOP to consider those matters "on a case-by-case basis under the Management Variable 'Greater Security.'" (*Id.* at 10-11). The program statement further notes that absconding from community supervision is considered a "minor history of escape" for which "[t]here must be a finding of guilt . . . ." (*Id.* at 11).

With respect to custody classification scores, there are different charts applicable to male and female prisoners. Male prisoners who have a total security score of 12-15 points are eligible for placement at a low security level facility; whereas male prisoners with a total points level from 16-23 are subject to medium security level placement. (*Id.* at 2). As noted above, the total security score is made up of two components: a base score is determined and then a custody variance is applied based upon a custody score that determines the variance, as found on a chart in Table 6-1 (M) on page 15 of Chapter 6 of P.S. 5100.08.

Petitioner asserts that the points for escape history are calculated as part of the base score prior to the application of any custody variance. He further contends that his base score is 16 and his custody score is 14, which results in a security total of 17 (adding a variance of +1 to his base score, as set forth on the Table 6-1 (M) chart). Petitioner further contends that, if the single point were removed for his alleged minor escape, he

5

would have a base score of 15 and, with a custody score of 14, there would be no variance, and he would be placed in the 12-15 point range and be subject to a low-level custody placement. He contends that this amounts to a "quantum change" in his level of custody. (ECF No. 2 at 6; ECF No. 16 at 6).

The undersigned's analysis begins with the fact that an inmate has no federal constitutional right to be housed in any particular prison facility or to any particular classification. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (inmates generally have no due process liberty interests and the paramount interest in institutional security may require limitation of what constitutional rights are retained); *Meachum v. Fano*, 427 U.S. 215 (1976) (transfer of an inmate to a higher custody level facility generally does not implicate a liberty interest). Thus, courts have rejected due process challenges based upon an inmate's security classification, as well as claims that an inmate's higher security classification violates the cruel and unusual punishments clause of the Eighth Amendment. *See, e.g., Levi v. Ebbert*, 353 F. App'x 681, 682 (3d Cir. 2009); *Hinton v. Fed. Bureau of Prisons*, No. 5:08-cv-01012, 2009 WL 33471158, at *3 (S.D. W. Va. Oct. 14, 2009) (There is "no liberty interest in receiving a specific security level designation" and a higher security classification does not pose a "significant and atypical hardship compared to other inmates.")

Additionally, determination of custody classification is exclusively within the discretion of the BOP. Thus, numerous courts have held that petitions such as this are not really challenging the execution of the inmate's sentence because the length of the inmate's prison term will not be affected, and, therefore, such petitions are not appropriate for review under § 2241. *See, e.g., Korac v. Young*, No. 18-cv-17048, 2019 WL 5078756 (D.N.J. Oct. 10, 2019) ("A claim that a prisoner's custody classification score

was wrongly calculated is not a challenge to the fact or length of his confinement, and therefore is not cognizable in a § 2241 petition."). As aptly noted by Respondent, "Petitioner actually seeks a change in his location of confinement, not the duration of his confinement." (ECF No. 15 at 3). Moreover, Petitioner's contention that a transfer to a lower security facility would hasten his release from custody is entirely speculative. Thus, even taking Petitioner's contentions concerning his custody classification as true, the undersigned agrees with Respondent's assertion that his claim is not cognizable in a § 2241 petition and a writ of habeas corpus is not the correct avenue for relief.

## **RECOMMENDATION**

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Petitioner is not entitled to habeas corpus relief on his claim. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 2) and **DISMISS** this civil action from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendation" is hereby filed, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (making of objections), and then three days (service/mailing), from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Judge Volk.

The Clerk is directed to file this "Proposed Findings and Recommendation," to mail a copy of the same to Petitioner, and to transmit a copy to counsel of record.

March 16, 2020

Dwane L. Tinsley
United States Magistrate Judge